Michael J. McQuaid (Bar No. 95871)
CARR, McCLELLAN, INGERSOLL,
THOMPSON & HORN
Professional Law Corporation
216 Park Road
P.O. Box 513
Burlingame, California 94011-0513
Telephone: (650) 342-9600
Facsimile: (650) 342-7685
mmcquaid@carr-mcclellan.com

Attorneys for Creditors
ALLAN AND BEVERLY SEBANC,
Trustees of the Sebanc Family Trust

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DEMMIE BALAURO ACOSTA,<br><br>Debtor. | Case No. 09-32339 DM<br><br>Chapter 11<br><br>OBJECTION TO DEBTORS' MOTION TO EXTEND TIME DURING WHICH ONLY DEBTORS MAY FILE A PLAN<br><br>Date: December 11, 2009<br>Time: 10 a.m.<br>Room: Courtroom 22 |

Allan and Beverly Sebanc, Trustees of the Sebanc Family Trust ("Sebanc"), creditors of the Debtor, hereby object to the Debtors' Motion to Extend Time During Which Only Debtors May File a Plan (the "Motion").

## INTRODUCTION

Sebanc continues to be concerned at the lack of progress in this case and Mrs. Acosta's lack of knowledgeable concerning assets of the estate and the estate's financial status and transactions.[1] From her testimony at meetings of creditors it appears that Mrs. Acosta only has extremely limited knowledge of the Debtors' assets and liabilities, of the estate's income and expenses, or of events occurring in the case. For example, when asked at the meeting of creditors

---

[1] The facts cited in this Objection are set forth in the accompanying Declaration of Michael J. McQuaid.

22815-06153\iManage\3138830.1   OBJECTION

about the amount of interest accruing on a monthly basis on the Debtors' secured obligations she could not respond. Since the secured obligations total over $32 million the monthly accrual amount is extremely important to be aware of. Further, Ms. Acosta could not respond to questions concerning the filed Monthly Operating Reports. For example, when asked about her September 2009 Monthly Operating Report showing $488,043 in Post Petition Liabilities Mrs. Acosta did not know about it and could not respond. (It was indicated that the Monthly Operating Report may be in error. However, no corrected operating report has been filed.) Or, when asked why the bank statement did not reflect the deposit of September rents into her DIP account, Mrs. Acosta did not know. In addition, when asked at the last meeting of creditors about an offer that was made on the Fitch/Innes property she was not aware that an offer had been made despite the fact that it had been. Creditors' loss of confidence in the debtor's management has been cited as a factor in not extending the exclusivity period. See, *In re All Seasons Industries, Inc.*, 121 B.R. 1002, 1006 (Bankr. N.D. Ind. 1990).

Sebanc is further concerned about the lack of progress in the case. For example, properties are not being promptly listed for sale. Despite the passage of nearly 4 months, Debtors still do not have a marketing strategy and, except for one property (which was listed in late October) none of the properties are listed for sale. Debtors admit that properties need to be sold but nothing is being done. (In the Motion Debtors state that other properties will be listed but no further applications to employ real estate brokers have been filed by the Debtors.) Sebanc fears that an extension of the exclusivity period will enable the further lack of progress in the cases.

ARGUMENT

Debtors seek to extend the exclusivity period for 6 months, to June 15, 2010, under Section 1121(d)(1) but have not demonstrated the requisite "cause" for the requested extension. Debtors bear the burden of establishing cause for the extension. See, *In re Hoffinger Industries, Inc.*, 292 B.R. 639, 643 (8th Cir. BAP 2003) ("…the party requesting an extension of the exclusivity period has the burden of establishing good cause.")

First, Debtors have not met their burden since they have not provided any admissible evidence in support of the Motion. Consequently, the Motion cannot be granted.

Even had they provided admissible evidence, the factors supporting "cause" do not exist in this case. The following factors were cited with approval by the BAP in *In re Henry Mayo Newhall Memorial Hosp.*, 282 B.R. 444 452 (9th Cir. BAP 2002): (1) whether it is a first extension; (2) whether it is a complicated case; (3) whether the case had not been pending for a long time, relative to its size and complexity; (4) whether the debtor did not appear to be proceeding in bad faith; (5) whether debtor had improved operating revenues so that it was paying current expenses; (6) whether debtor had shown a reasonable prospect for filing a viable plan; (7) whether debtor was making satisfactory progress negotiating with key creditors; (8) whether debtor did not appear to be seeking an extension of exclusivity to pressure creditors; and (9) whether debtor was not depriving the Committee of material or relevant information.

This is not a complicated case. Although there are a number of properties it is evident that the Debtors cannot support debt service and so they must be sold.[2] However, the Debtors have only listed one of them in the almost 4 months that this case has been pending. The Debtors merely are "in discussions" with brokers and have not determined list prices or properties to be listed. Meanwhile, interest on the $32 million of secured debt has accrued and is continuing to accrue and hundreds of thousands of dollars in real property taxes have accrued and are continuing to accrue. Those accruals are having a severe negative impact on the assets of the estate.

The case has been pending for close to four months but there has been no significant progress toward a plan. Expiration of exclusivity may promote meaningful negotiations and progress toward a plan.

Although not likely to amount to bad faith the Debtors' conduct in the cases has been below that expected of a competent debtor in possession. For example, Monthly Operating Reports have not been timely filed. Indeed only one operating report has been filed and the Debtors admit it needs to be corrected but Debtors have not done so. Mrs. Acosta is not knowledgeable concerning assets of the estate nor of the estate's financial status and transactions.

---

[2] Sebanc questions the accuracy of the Debtors' valuations of the properties and believes those values need to be tested by exposing the properties to the market, which Debtors have failed to do.

22815-06153\iManage\3138830.1 - 3 - OBJECTION

Mrs. Acosta was not even aware that an offer had been made on the estate's largest property.

Since only one Monthly Operating Report has been filed (which Debtors admit is inaccurate) it cannot be determined whether Debtors have improved operating revenue since the filing. However, even if Debtors' cash flow has improved it pales in comparison to the interest and real property tax accruals on the Debtors' real properties.

No specifics are given as to a viable plan. Although the Debtors have mentioned various scenarios, there has been no evidence that the Debtors can file a viable plan. For example, at the meeting of creditors Debtors stated that they are planning to have the Fitch/Innes property re-zoned prior to listing it for sale. However, Debtors admitted that this would take significant time to accomplish and that they will need $1-2 million to pay for professional fees alone to do so. When asked where this money will come from Mrs. Acosta did not know. The value of the Fitch/Innes property in this economic environment is uncertain but what is certain is that the loans and taxes secured by the property accrue at staggering amounts. In the six month period that Debtors are requesting these accruals will exceed $1.0 million. Given this and the likely time needed to market and sell the property, the Fitch/Innes property in particular needs to be listed as soon as possible but Debtors have not done so and are not intending to do so.

Debtors only mention commencement of preliminary discussions with La Jolla Bank. No specifics are given. No prospects of an agreement are given. No mention is made of discussions with other creditors.

Pressure to creditors is being applied by the accrual and non-payment of interest and property taxes. In the Motion Debtors state that over the next several months the Debtors through sales will be able to "restore the estate to a position of having positive cash flow" but again, no specifics are provided. Given the huge monthly accruals it is wildly optimistic that the Debtors can accomplish this without selling most, if not all, of the properties. However, there will be no sale unless the properties are listed and as of today, Debtors have only listed one property for sale.

Debtors have failed to provide relevant and material information to creditors. Only one Monthly Operating Report has been filed and Debtors have admitted that it is not accurate and needs to be corrected but have not done so.

Finally, the denial of the motion will not prevent the Debtors from proposing a plan. If it is fair and viable it will be accepted by the creditors. Moving the case forward is the "transcendent consideration" in deciding whether to extend the exclusivity period. *Newhall Memorial Hosp.*, 282 B.R. at 453. Here, expiration of exclusivity may promote meaningful negotiations and progress toward a plan rather than the very limited progress that has been made to date.

Based on the foregoing, Sebanc requests that the Debtors' Motion be denied.

Dated: December 4, 2009

CARR, McCLELLAN, INGERSOLL,
THOMPSON & HORN
Professional Law Corporation

By: *Michael J. McQuaid*
Michael J. McQuaid
Attorneys for Creditors
ALLAN AND BEVERLY SEBANC,
Trustees of the Sebanc Family Trust